UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTIAN BEILER,

     Petitioner,

v.                               **Case No. 8:19-cv-1619-MSS-CPT**

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.
_____/

## O R D E R

Before the Court is Christian Beiler's timely-filed *pro se* petition for the writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1) Having considered the petition, the supporting memorandum (Doc. 2), the response in opposition (Doc. 11), and Beiler's reply (Doc. 17), and in accordance with the *Rules Governing Section 2254 Cases in the United States District Courts*, the Court **ORDERS** that the petition is **DENIED**:

## PROCEDURAL HISTORY

A state court jury convicted Beiler of sexual battery by a person 18 years of age or older upon a child less than 12 years of age. (Doc. 12-1 Ex. 10) The state trial court sentenced him to life in prison. (Doc. 12-1 Ex. 14) The state appellate court *per curiam* affirmed the conviction and sentence. (Doc. 12-1 Ex. 19) Beiler moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 12-1 Ex.

26) The state court summarily denied the motion. (Doc. 12-2 Ex. 27) The state appellate court *per curiam* affirmed the denial of relief. (Doc. 12-3 Ex. 30)

## FACTS[1]

The victim, Beiler's granddaughter, lived in Sarasota, Florida. Beiler and the victim's grandmother lived in Pennsylvania. They visited the victim and their other grandchildren in Sarasota in November 2001, when the victim was in third grade. The grandparents stayed at a hotel. They arranged for the victim and her brother to stay with them one night. The victim considered it a treat to spend the night at a hotel.

Beiler and the victim's grandmother slept in the hotel room bed. The victim and her brother slept on the floor. The victim slept on her stomach. During the night, the victim woke up when she heard her grandparents arguing. Her grandmother said, "Chris, don't do this; don't do this, Chris." (Doc. 12-3 Ex. 33 at 26) Beiler removed the blanket covering the victim. Beiler pulled down her pants and underwear and "hovered over" her. (Doc. 12-3 Ex. 33 at 27) The victim felt Beiler "kind of like, spread [her] butt checks a little bit" and push his penis down "as if he was trying to" penetrate her vagina "but he couldn't." (Doc. 12-3 Ex. 33 at 27-29) Beiler's penis touched the victim's vagina and "butt." (Doc. 12-3 Ex. 33 at 27-28) Beiler then moved "like . . . humping . . . up and down" for 10 minutes before he pulled the victim's clothing back up and put the blanket over her. (Doc. 12-3 Ex. 33 at 28) The victim heard her

---

[1] The factual summary is based on the trial transcript and appellate briefs.

grandmother tell Beiler to wash his hands. The victim pretended to be asleep throughout the incident because she was scared and did not know what to do.

When the victim woke up the next morning, Beiler was out getting breakfast. The victim's grandmother hugged her tightly. The victim acted normally during the rest of the November 2001 visit. In the following years, she visited her grandparents in Pennsylvania and spent time with Beiler. She worried that any change in the way she acted around Beiler would cause her family to ask questions.

In 2013, a few years after the victim's grandmother died, the victim told her family about the hotel room incident. During the police investigation, the victim placed a controlled call to Beiler. During the call, Beiler admitted touching the victim but denied trying to penetrate her. He told the victim that "[i]t was just a selfish act to get myself relieved between your butt cheeks. That was all." (Doc. 12-3 Ex. 33 at 42) Beiler also said that he believed the victim was asleep and that he would not have touched her if he had known that she was awake. Beiler told the victim that he was sorry.

The victim's family alerted Beiler's church in Pennsylvania, where he assisted in teaching Sunday School. Eric Goldsborough, an associate pastor at the church, invited Beiler to breakfast to address the allegations and find out if anything had happened to children at the church. They met at a restaurant in Pennsylvania. After they ate, Pastor Goldsborough asked Beiler if he knew why Pastor Goldsborough was there, and Beiler said that he did. Beiler admitted to Pastor Goldsborough that he

molested his granddaughter when he thought she was asleep. Beiler denied touching any children at the church.

Pastor Goldsborough referred Beiler to Daniel Derrer, a therapist at a counseling center affiliated with the church. Beiler called Derrer and made an appointment for a counseling session. Over the phone, Derrer informed Beiler that he might have to make a report to authorities depending on what Beiler said. Beiler appeared for the appointment and told Derrer that he had "relieved himself in his granddaughter's buttocks" when he thought she was asleep. (Doc. 12-3 Ex. 34 at 89) Beiler indicated that he repented eight to ten years ago due to his feelings of guilt and shame. While Beiler was still present, Derrer called Children and Family Services. Derrer and Beiler talked with a Children and Family Services employee. Derrer testified that during that phone conversation, Beiler repeated what he told Derrer.

The victim was 20 years old at the time of trial. Beiler did not deny unlawful contact with the victim, but argued that the State's evidence was only sufficient to show attempted sexual battery.

<strong>STANDARDS OF REVIEW</strong>

## I.   The AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides

that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was

5

an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of Beiler's postconviction claims without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

## II.   Ineffective Assistance Of Counsel

Beiler brings claims alleging ineffective assistance of trial counsel. Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Beiler must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Beiler must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (stating that this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt."). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

### EXHAUSTION OF STATE REMEDIES; PROCEDURAL DEFAULT

A § 2254 petitioner must exhaust his federal claims in state court before presenting them in a federal habeas petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan*

*v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## DISCUSSION

### I.    Procedurally Defaulted Grounds: Grounds One, Two, And Three

In Ground One, Beiler contends that the state trial court lacked subject matter jurisdiction because he was charged without presentment to or indictment by a grand jury. Beiler alleges violations of his rights under the Fifth and Fourteenth Amendments. In Ground Two, Beiler argues that the state trial court violated his Fourteenth Amendment rights by instructing the jury on attempted sexual battery, when he was charged with the completed act of sexual battery. In Ground Three, Beiler asserts that the state trial court erred in allowing the State to use a portion of a Power Point presentation in closing arguments in violation of his federal constitutional right to a fair trial.

When Beiler raised these claims of trial court error and lack of jurisdiction on direct appeal, he presented them solely under state law. (Doc. 12-1 Ex. 18) Beiler did not cite any federal authority or allege any violation of his federal constitutional rights. (Doc. 12-1 Ex. 18) Accordingly, Beiler failed to exhaust the federal nature of the claims. *See Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015) ("The purpose of the exhaustion requirement is straightforward: the petitioner must have given the state courts a meaningful opportunity to address his federal claim. . . . The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim.") (internal quotation marks and citation omitted).

Beiler cannot return to state court to present the federal claims in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within 30 days of the rendition of a sentence). Therefore, his claims are procedurally defaulted. *See Smith*, 256 F.3d at 1138. Beiler contends that the cause and prejudice exception applies to allow review of these defaulted claims. To show cause to overcome a procedural default, Beiler must demonstrate "that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright*, 169 F.3d at 703. Beiler has not made this showing.

Beiler's appellate attorney filed a brief under *Anders v. California*, 386 U.S. 738 (1967), stating that he could find no meritorious appellate issues after reviewing the record. (Doc. 12-1 Ex. 17) Therefore, Beiler filed the appellate brief *pro se*. (Doc. 12-1 Ex. 18)[2] Beiler contends that he has shown cause for the procedural default because he was proceeding *pro se* and relied on assistance from prison law clerks in preparing the appellate brief.

Beiler has not shown that his *pro se* status or his reliance on prison law clerks constitute cause to excuse the default resulting from his failure to exhaust the federal nature of his claims. The prison law clerks were not attorneys representing Beiler; rather, it appears they were merely assisting him after his appointed attorney filed an

---

[2] *See In re Anders Briefs*, 581 So.2d 149, 151 (Fla. 1991) (discussing procedures under *Anders* in Florida and stating that when appointed counsel files an *Anders* brief, "the indigent must be given the opportunity to file a pro se brief. . . . The appellate court then assumes the responsibility of conducting a full and independent review of the record to discover any arguable issues apparent on the face of the record").

*Anders* brief. *See, e.g., Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1236 (11th Cir. 2017) (listing circumstances under which an *attorney's* acts or omissions might provide a basis for equitable tolling); *see also McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992) (stating that a *pro se* petitioner's lack of legal education does not constitute cause to overcome a procedural default); *Harmon v. Barton*, 894 F.2d 1268, 1275 (11th Cir. 1990) (rejecting a petitioner's claim that his *pro se* status constituted cause for a procedural default and noting that "[t]he factual and legal basis for a challenge . . . was plainly available to the petitioner at the time" he filed his state petition). Beiler does not demonstrate applicability of the cause and prejudice exception.

Nor does Beiler establish that the fundamental miscarriage of justice exception applies to overcome the default of these grounds. Although Beiler claims in a generalized manner that failing to review the grounds on the merits would result in a fundamental miscarriage of justice, he does not offer any evidence to demonstrate that he is actually innocent of the crime of conviction. *See Henderson*, 353 F.3d at 892. Because Grounds One, Two, and Three are procedurally defaulted and Beiler has not established applicability of an exception to overcome the default, these Grounds are barred from federal habeas review.

## II.   Merits Review: Grounds Four, Five, Six, And Seven

### A.   Ground Four

Beiler argues that trial counsel was ineffective for failing to move to strike the entire jury panel. He contends the panel "was tainted by biased comments made by

prospective jurors during voir dire." (Doc. 1 at 10) Beiler refers to statements made by prospective jurors 26, 29, 30, and 44.

The trial court asked the prospective jurors whether it would be difficult for them to be fair and impartial considering the nature of the charge. The trial court gave them the option of answering in front of the panel or at the bench. Prospective juror 30 stated (Doc. 12-3 Ex. 32 at 18):

> PROSPECTIVE JUROR 30: My niece was molested and it would be hard for me to just - -
>
> THE COURT: That experience you think would have an effect or possibly have an effect on your ability to be completely fair and objective in this case?
>
> PROSPECTIVE JUROR 30: Yes. Even though this person was charged - - not charged, but I still have personal things against him when I see him.
>
> THE COURT: Okay. You think that would carry over to another case that wasn't even related to - -
>
> PROSPECTIVE JUROR 30: I actually do.

Prospective juror 44 also answered the court's questions about the ability to be fair and impartial (Doc. 12-3 Ex. 32 at 39-40):

> THE COURT: [ ] I notice one hand in the back. Is that [prospective juror 44]?
>
> PROSPECTIVE JUROR 44: Yes.
>
> THE COURT: Is that something can you tell me in general terms or is that something you would like to discuss in private?
>
> PROSPECTIVE JUROR 44: I can tell you generally. I have a very bad aversion to this. I have two daughters of my own and I have a - -

THE COURT: Let me ask you this because of - -

PROSPECTIVE JUROR 44: Not personal though, nothing has happened to my girls.

THE COURT: Yes.

PROSPECTIVE JUROR 44: But I had a situation where I knew a couple and I knew the man very well and never in my wildest dreams I would think he would be convicted of something like that. So there's too much of it in this world, for me. I have high anxiety level [sic] for this.

THE COURT: All right, [prospective juror 44]. In this case, I just need to find out, at the moment, this is an allegation. The State is alleging that he did this. The law says you must presume him to be innocent and the State would be required to prove guilt beyond a reasonable doubt through the presentation of evidence. Do you think that sitting here right now as we're speaking, can you afford Mr. Beiler that presumption of innocence or do you think it would be difficult for you to do that given what you just told me?

PROSPECTIVE JUROR 44: It would be very difficult. I wouldn't want to hear those details.

THE COURT: Okay. All right. Thank you. . . .

At the conclusion of *voir dire*, when the trial court asked if any of the prospective jurors wanted to bring any other information to the court's attention, prospective juror 29 stated (Doc. 12-3 Ex. 32 at 127):

PROSPECTIVE JUROR 29: Yes. Yes. I have come across in nursing and even in Hospice people that finally bring up things that happen to them personally that they never thought they would ever bring up, but they have to clear their mind or their chest or whatever. I was just concerned that if there was somebody here that had been male or female that had been molested that has not told anybody yet. You know what I'm saying? If this is going to trigger for them and then they react on that.

THE COURT: I think I've taken care of that by asking if anyone wanted to talk about anything in private. I think we covered that. Thank you.

13

During the prosecutor's *voir dire* questioning, she asked the panel whether they would "expect that every single child that's been [sexually abused] would yell out and ask for help" or if they would "think that sometimes a child might acquiesce to the act because they can't really do anything else." (Doc. 12-3 Ex. 32 at 101) Prospective juror 26 answered (Doc. 12-3 Ex. 32 at 101):

> PROSPECTIVE JUROR 26: I was just going to say from my own life experience knowing people that have been molested within my family, they actually blocked it out of their mind until they were like 18 years of age. It was also two siblings, you know, and they totally shut it out and put it in that trapdoor in their mind until something in their later years of age triggered it.

The state court denied Beiler's claim that trial counsel was ineffective for not moving to strike the entire panel based on the above comments (Doc. 12-2 Ex. 27 at 3-5) (emphasis in original) (footnotes omitted):[3]

> Defendant claims four prospective jurors expressed biased statements during *voir dire*, which supposedly tainted the entire venire. Notably, Defendant concedes these four jurors were never impaneled in his trial. . . . Defendant argues counsel failed to strike the entire panel for bias.
>
> A juror must be excused for cause "if any reasonable doubt exists as to whether the juror possesses an impartial state of mind." *Overton v. State*, 801 So.2d 877, 890 (Fla. 2001) (quoting *Kearse v. State*, 770 So.2d 1119, 1128 (Fla. 2000)). The failure to strike a biased juror may be grounds for an evidentiary hearing. *See Davis v. State*, 892 So.2d 1073, 1075 (Fla. 2d DCA 2004) ("allowing a biased member of the venire to serve on a jury suggests a deficiency of performance sufficient to require a conclusive rebuttal by the record or an evidentiary hearing") (quoting *Williams v.*

---

[3] In Grounds Four and Five of his § 2254 petition, Beiler raises one claim of ineffective assistance of trial counsel regarding jury selection in each Ground. He raised both of these claims within Ground One of his Rule 3.850 postconviction motion, and the state court addressed the claims together. This Court discusses the claims separately for clarity. However, some language quoted from the state court's order refers to both claims.

*State*, 673 So.2d 960, 961 (Fla. 1st DCA 1996)). In order to succeed on such a claim, however, a defendant must demonstrate that a *seated* juror was actually biased against a defendant, and that this partiality was plain from the face of the record. *Carratelli v. State*, 961 So.2d 312, 323 (Fla. 2007).

Both of Defendant's claims in Ground One are meritless. First, Defendant concedes that the four prospective jurors he specifically complains of—Prospective Jurors #30, #44, #26, and #29—did not serve in his trial Instead, Defendant claims the statements of these four jurors during *voir dire* imputed bias to the entire venire. However, as the Florida Supreme Court has observed: "In order for the statement of one venire member to taint the panel, the venire member must mention facts that would not otherwise be presented to the jury." *Johnson v. State*, 903 So.2d 888, 897 (Fla. 2005) (citing *Pender v. State*, 530 So.2d 391 (Fla. 1st DCA 1988); *Wilding v. State*, 427 So.2d 1069 (Fla. 2d DCA 1983)). As in *Johnson*, no venire member in Defendant Beiler's case mentioned a fact that would not otherwise be presented to the jury; at most these four venire members merely expressed opinions based on their own experiences. "A venire member's expression of an opinion before the entire panel is not normally considered sufficient to taint the remainder of the panel." *Johnson*, 903 So.2d at 897.

Moreover, as reasoned by the Second District Court of Appeal in *Davis*, Defendant's claims do not set forth a proper showing of *Strickland* prejudice:

> Because a defendant must demonstrate prejudice in a 3.850 proceeding, post-conviction relief based on a lawyer's incompetence with regard to the composition of the jury is reserved for a narrow class of cases where prejudice is apparent from the [face] of the record, where a biased juror actually served on the jury.

*Davis*, 892 So.2d at 1075 (quoting *Jenkins v. State*, 824 So.2d 977, 982 (Fla. 4th DCA 2002)). To reiterate, none of the four prospective jurors now complained of served in Defendant's trial. In failing to demonstrate any *actual* juror bias, Defendant has failed to meet the prejudice prong of the *Strickland* test. *See Jenkins*, 824 So.2d at 982. Nor did this Court's more exhaustive review of the entire *voir dire* transcript turn up any evidence of bias. Therefore, the Court will deny Defendant's motion as to this claim. . . .

As a final observation, Defendant's allegations in Ground One are deeply speculative; he asserts a motion to strike the entire jury panel would have: (1) been granted; (2) a whole new jury panel would have been selected; (3) the new jury would find all of the State's witnesses incredible; and (4) Defendant would have been found not guilty. *See Connor v. State*, 979 So.2d 852, 963 (Fla. 2007) ("Ineffective assistance of counsel claims must be based on more than speculation and conjecture."). The Court's confidence in the outcome of this case has not been undermined by any of Defendant's allegations under Ground One, and accordingly, it will be denied.

Beiler has not established that the state court unreasonably denied his claim. He fails to show that counsel performed deficiently by not moving to strike the panel. As the state court observed, for a prospective juror to taint the entire panel, he or she must state facts about the case that the jury otherwise would not hear. *See Johnson v State*, 903 So.2d 888, 897 (Fla. 2005) ("In order for the statement of one venire member to taint the panel, the venire member must mention facts that would not otherwise be presented to the jury."); *see also United States v. Tegzes*, 715 F.2d 505, 507-08 (11th Cir. 1983) (approving the trial court's refusal to strike the entire panel based upon the statement of one prospective juror when the statement "did not constitute an opinion concerning the guilt or the innocence of the defendants, nor did it relate to knowledge about the facts, parties, or witnesses involved in this case"). The prospective jurors did not state any such facts. Rather, they informed the court and the parties about their own beliefs and concerns as relevant to the charged offense. Making such comments was consistent with the purpose of *voir dire*, which is to "ascertain whether a potential juror can render a verdict solely on the basis of the evidence presented and charge of the trial court." *Wilcox v. Ford*, 813 F.2d 1140, 1150 (11th Cir. 1987).

16

Additionally, Beiler does not show that the state court unreasonably applied *Strickland*'s prejudice prong. Claims based on the jury's alleged lack of impartiality concern individuals who were seated on the jury. *See Ross v. Oklahoma*, 487 U.S. 81, 86 (1988) ("Any claim that the jury was not impartial . . . must focus not on [a prospective juror who was removed during the selection process] but on the jurors who ultimately sat."); *Rogers v. McMullen*, 673 F.2d 1185, 1189 (11th Cir. 1982) ("[A] petitioner is entitled to habeas relief only upon a showing that the juror [who served on his jury] was actually biased or incompetent."); *see also Fennell v. Sec'y, Fla. Dep't of Corr.*, 582 F. App'x 828, 832 (11th Cir. 2014)[4] (recognizing that to succeed on a postconviction motion under Rule 3.850, a petitioner must the actual bias of a juror).

The record shows that none of the four prospective jurors about whom Beiler complains were selected to serve on his jury. (Doc. 12-3 Ex. 32 at 133-34) Beiler does not demonstrate that any of the jurors who in fact sat on the jury were actually biased. Thus, as the state court found, his claim is too speculative to establish prejudice. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's "unsupported allegations" that are "conclusory in nature and lacking factual substantiation" cannot sustain an ineffective assistance claim).

Beiler does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his ineffective assistance claim. He is not entitled to relief on Ground Four.

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

### B.    Ground Five

Beiler contends that trial counsel was ineffective for failing "to properly voir dire prospective jurors." (Doc. 1 at 12) Beiler claims that counsel failed to elicit responses to a question he posed during *voir dire*. Counsel asked (Doc. 12-3 Ex. 32 at 123-24) (emphasis added):

> [COUNSEL]: Okay. *Can you think of anything worse than being charged with a sex offense on a minor other than short of murder?* How many of you believe that he must have done something or he wouldn't be here? There's those of you who have family in law enforcement. Ma'am, do you think he must have done this, [prospective juror 4], he must have done something or he wouldn't be here? I mean, it's not out of the blue, he was dragged off the street - -
>
> PROSPECTIVE JUROR 4: Something must have happened whether it happened or there was ill feelings - - I don't know. I just know there's a family that's wrecked now.

Counsel then moved to on to ask questions about whether forgiveness should be a part of the criminal justice system and whether any prospective juror's religious beliefs about forgiveness would affect his or her ability to decide the case based upon the evidence. (Doc. 12-3 Ex. 32 at  124-26)

Beiler argues that the question of whether the prospective jurors could think of any worse charge other than murder inflamed the jury. He claims that if counsel sought answers to that question from all the prospective jurors, biased individuals could have been identified and removed or counsel could have moved to strike the entire panel. The state court denied Beiler's ineffective assistance of trial counsel claim (Doc. 12-2 Ex. 27 at 3, 5-6):

Defendant alleges [as his second claim in Ground One that] counsel failed to determine bias among the selected members of the jury. According to Defendant, although counsel asked questions during *voir dire*, some jurors failed to answer all of these questions. Presumably, this permitted biased jurors to become impaneled. . . . Defendant argues counsel failed to strike the entire panel for bias.

. . .

Defendant's second claim under Ground One is equally [as] meritless [as the first claim]. Defendant argues counsel failed to elicit a response to the following question during *voir dire*: "Can you think of anything worse than being charged with a sex offense on a minor other than short of murder." According to Defendant, the failure to ensure prospective jurors answered this question permitted biased jurors to become surreptitiously impaneled. Notwithstanding the speculation of Defendant's claim, the record during *voir dire* indicates defense counsel inquired into a broad range of legal, social, and philosophical topics, including the responsibilities of jurors, a defendant's presumption of innocence, the clarity of a victim's memories *vis-à-vis* the passage of time, and the ethical opacity of criminal offenses in American jurisprudence. . . . Even if the Court perceived the answering of counsel's question with the same degree of gravity claimed by the Defendant, the Court is still hard-pressed to find Defendant's proceedings turned on whether an entire biased jury panel successfully infiltrated Defendant's trial by consciously evading a single question among many. *Strickland*, 466 U.S. at 694; *see Carratelli*, 961 So.2d at 323 ("the error must be egregious" and mere doubt of impartiality is insufficient to warrant relief).

As a final observation, Defendant's allegations in Ground One are deeply speculative; he asserts a motion to strike the entire jury panel would have: (1) been granted; (2) a whole new jury panel would have been selected; (3) the new jury would find all of the State's witnesses incredible; and (4) Defendant would have been found not guilty. *See Connor v. State*, 979 So.2d 852, 963 (Fla. 2007) ("Ineffective assistance of counsel claims must be based on more than speculation and conjecture."). The Court's confidence in the outcome of this case has not been undermined by any of Defendant's allegations under Ground One, and accordingly, it will be denied.

Beiler does not show that the state court unreasonably denied his ineffective

assistance of trial counsel claim. Beiler has not demonstrated that counsel's failure to

elicit answers from the panel as to whether they could think of a worse charge amounted to ineffective assistance under *Strickland*. Viewing this question with the one immediately following it—"How many of you believe that he must have done something or he wouldn't be here?"—shows that counsel was getting to whether any prospective juror would presume guilt based on a belief that the State would only accuse a person of such a serious offense if the person was guilty.

Counsel was not ineffective for not eliciting additional answers to this question. The trial court addressed the issues of Beiler's presumption of innocence and the prospective jurors' potential bias due to the nature of the charges earlier in *voir dire*. The trial court reviewed the allegation and told the prospective jurors that they must presume Beiler to be innocent and they must not stray from the presumption of innocence based on the type of allegation. (Doc. 12-3 Ex. 32 at 13-14) The trial court asked if any of the prospective jurors would have difficulty being completely fair and impartial because of the nature of the charge. (Doc. 12-3 Ex. 32 at 15)

After several prospective jurors were excused for various reasons, the trial court called for more prospective jurors. When those new prospective jurors joined the panel, the court also informed them about the presumption of innocence and asked about their ability to be fair and impartial due to the nature of the offense. (Doc. 12-3 Ex. 32 at 37-39) The trial court again summarized Beiler's presumption of innocence and asked the prospective jurors what their verdict would be at that time before hearing any evidence. (Doc. 12-3 Ex. 32 at 48) The panel gave answers of "not guilty" and "innocent." (Doc. 12-3 Ex. 32 at 48-49) When defense counsel questioned the panel,

as the state court noted, he asked numerous questions about the courts and the criminal justice system. He questioned a prospective juror about her impressions upon hearing the charge and whether it was important to hear all the evidence before making a decision. (Doc. 12-3 Ex. 32 at 115-16)

The panel had already been questioned about the presumption of innocence regardless of the nature of the charge and whether they could be fair and impartial. Accordingly, Beiler does not show that trial counsel was ineffective in not asking all prospective jurors to answer the identified question in order to uncover potential bias.

Further, as addressed by the state court, Beiler's ineffective assistance claim is too speculative to show that he was prejudiced by counsel's performance. Beiler only surmises that if counsel had pressed the entire panel for an answer, another prospective juror or jurors would have stated an inability to be fair and impartial due to the nature of the charge. Beiler does not come forward with evidence to support this theory. Therefore, he does not show that counsel would have had any basis to strike individual jurors or the entire panel. Moreover, Beiler does not establish that an actually biased juror served in his case. *See* Rogers, 673 F.2d at 1189; *Fennell*, 582 F. App'x at 832. Beiler cannot obtain federal habeas relief on this speculative claim. *See Tejada v. Dugger*, 941 F.2d at 1559.

Beiler does not show that the state court's ruling involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Five.

## C.    Grounds Six And Seven

In Ground Six, Beiler argues that trial counsel was ineffective for failing to move to exclude his statements to Pastor Goldsborough based on clergy-penitent privilege under the law of Pennsylvania, where the communication occurred. In Ground Seven, he similarly argues that trial counsel was ineffective for failing to "familiarize himself with the relevant statutory and case law concerning clergy-penitent privilege for both Florida and Pennsylvania" and present additional argument in support of the statements' exclusion. (Doc. 1 at 16)

Before the State called Pastor Goldsborough at trial, defense counsel requested a proffer of his testimony to determine the circumstances surrounding the conversation for purposes of the clergy privilege. (Doc. 12-3 Ex. 33 at 71) Pastor Goldsborough's proffered testimony reflected that after he learned of the allegations against Beiler, he invited Beiler to breakfast to address the allegations and find out whether Beiler harmed any children at the church. (Doc. 12-3 Ex. 34 at 76-77) They met at a restaurant open to the public, where other people were present. (Doc. 12-3 Ex. 34 at 77-78) Beiler admitted molesting his granddaughter when he thought she was asleep, but denied touching any children at church. (Doc. 12-3 Ex. 34 at 78-80) After the proffered testimony, Beiler invoked the clergy privilege. (Doc. 12-3 Ex. 34 at 83)

Florida's clergy privilege is governed by § 90.505, Fla. Stat. The statute provides that a communication between a member of the clergy and a person is privileged "if made privately for the purpose of seeking spiritual counsel and advice from the member of the clergy in the usual course of his or her practice or discipline and not

intended for further disclosure except to other persons present in furtherance of the communication." § 90.505(1)(b), Fla. Stat.

After hearing Pastor Goldsborough's proffered testimony, the trial court found that the privilege did not apply. The trial court found that the purpose of the communication was not to seek spiritual counseling and advice and that Pastor Goldsborough did not receive the communication in the usual course of his practice or discipline. (Doc. 12-3 Ex. 34 at 85) As the communication took place in the public setting of a restaurant, the trial court found it arguable whether the communication was private within the meaning of the statute. (Doc. 12-3 Ex. 34 at 85)

The state postconviction court denied Beiler's ineffective assistance of trial counsel claims (Doc. 12-2 Ex. 27 at 7-8) (footnote omitted):

> Defendant alleges counsel performed deficiently in relation to the testimony of witness, Pastor Eric Goldsborough. At trial, Goldsborough testified that Defendant confessed to the crime. Although counsel attempted to preclude Goldsborough's testimony as protected by the clergy-penitent privilege pursuant to § 90.505, Fla. Stat., the trial court denied counsel's motion in limine. Under Ground Three, Defendant raises two separate, but nearly indistinguishable sub-claims. First, Defendant claims his attorney should have argued Pennsylvania's clergy-penitent privilege, rather than Florida's privilege. According to Defendant, the communication occurred in Pennsylvania, which removed the trial court's jurisdiction to apply the Florida privilege. Second, as a more general claim, Defendant alleges counsel failed to become apprised of Pennsylvania law in his Florida criminal trial. In both instances, Defendant claims application of Pennsylvania law would have resulted in a not guilty verdict.

> Defendant's understanding of the law is incorrect. The laws of one state are not binding on another state, and are not precedential authority. Moreover, by its very nature, Florida's clergy-penitent privilege determines the admissibility of communications between a clergyman and a penitent in a Florida court. § 90.505, Fla. Stat. Similarly,

Pennsylvania's comparable privilege governs the admissibility of such communication in a Pennsylvania court. § 5943, Penn. Stat. The geographic location in which such communication transpired is irrelevant in determining admissibility. Consequently, a motion in limine based on Pennsylvania's clergy-penitent privilege would have been meritless. *See Lukeheart v. State*, 70 So.3d 503, 513 (Fla. 2011) (noting "counsel cannot be deemed ineffective for failing to pursue a meritless motion"). Ground Three will, therefore, be denied.

Beiler does not show that the state court unreasonably denied his claim. First, Beiler cites no authority in either his Rule 3.850 motion or his § 2254 petition to support his contention that Pennsylvania's clergy privilege law governed the introduction of evidence in a trial conducted in Florida. Florida courts recognize those privileges set out as a matter of Florida statutory law or as a matter of Florida or federal constitutional law. *See* § 90.501, Fla. Stat. (providing that no person in a legal proceeding has a privilege to refuse to disclose any matter "[e]xcept as otherwise provided by this chapter, any other statute, or the Constitution of the United States or of the State of Florida"; *see also* Charles W. Ehrhardt, 1 Fla. Prac., Evidence § 501.1 (stating that "Section 90.501 provides that the Florida courts will only recognize privileges that are provided by the Florida Statutes, by constitutional interpretation, and by the Florida Supreme Court through its rule-making power").

The question of which law governs in determining the admissibility of a statement is a matter of Florida evidentiary law. The state postconviction court found that if counsel had moved to exclude the statement based on the Pennsylvania clergy privilege, the Florida trial court would have rejected the motion as "meritless" because

the Pennsylvania clergy privilege had no bearing the admissibility of Beiler's statement in a Florida state court criminal trial.[5]

This Court must defer to the state court's ruling on this underlying issue of Florida evidentiary law in reviewing the state court's denial of Beiler's ineffective assistance claim. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[The United States Supreme Court has] repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on

---

[5] This Court notes that contrary to Beiler's claim, it is not clear that the application of Pennsylvania's clergy privilege would have resulted in the statement's exclusion. In *Commonwealth v. Stewart*, the Supreme Court of Pennsylvania held that "application of the [clergy] privilege distills to a single inquiry: whether the communicant disclosed information in confidence to a member of the clergy in his or her capacity as confessor or spiritual advisor." 547 Pa. 277, 287-88, 690 A.2d 195, 200 (1997). The court stated that even a confidential communication to a member of the clergy for counseling or solace must be "motivated by spiritual or penitential considerations" for the privilege to apply. 547 Pa. at 288, 690 A.2d at 200.

[state law] – the objection would have been overruled. . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.").

Furthermore, to the extent Beiler contends within Ground Seven that counsel should have presented additional argument following the proffered testimony to support exclusion of the statement, Beiler fails to specifically allege what counsel should have argued to exclude the testimony. Beiler does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in determining that counsel did not perform deficiently.

Finally, even assuming for the sake of argument that Beiler could show the state court unreasonably applied *Strickland* in finding that counsel did not perform deficiently, he cannot show *Strickland* prejudice.[6] Beiler fails to show a reasonable probability of a different outcome at trial considering the State's overall evidence of guilt. The victim testified with specificity about the acts committed by Beiler. Additionally, the jury heard the recorded call, during which Beiler admitted to the victim that he committed a "selfish act to get myself relieved between your butt cheeks" when he thought she was asleep. (Doc. 12-3 Ex. 33 at 39, 42, 45) Furthermore, Beiler does not argue that his statements to Daniel Derrer were privileged. Beiler made

---

[6] As the state postconviction court's order did not expressly address the prejudice prong, Beiler would be entitled to a *de novo* review of the prejudice prong. *See, e.g., Johnson v. Sec'y, DOC*, 643 F.3d 907, 930-35 (11th Cir. 2011) (applying *Strickland*'s prejudice prong *de novo* upon finding that the state court's decision, which only addressed *Strickland*'s deficient performance prong, was contrary to or involved an unreasonable application of clearly established federal law set out in *Strickland*). Even under the *de novo* standard, Beiler cannot show that he was prejudiced by counsel's performance.

comments to Derrer consistent with those on the recorded call, stating that he "relieved himself" in the victim's buttocks when he thought she was asleep. (Doc. 12-3 Ex. 34 at 89) Beiler made this statement to Derrer even knowing that Derrer might have to report him to authorities. Indeed, Beiler spoke to a Children and Family Services employee on the phone while he was with Derrer and repeated what he had told Derrer.

Considering the victim's testimony, Beiler's recorded statement on the controlled call, and Beiler's statements during the counseling session with Derrer including the call to Children and Family Services, Beiler fails to show a reasonable probability that the outcome of trial would have been different if the jury had not heard that he told Pastor Goldsborough he molested his granddaughter. Beiler therefore cannot meet his burden to show entitlement to relief under *Strickland*. *See, e.g.*, *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001) ("A petitioner has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation."). Grounds Six and Seven do not entitle Beiler to relief.

It is therefore **ORDERED** that Beiler's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Beiler and to **CLOSE** this case.

## CERTIFICATE OF APPEALABILITY
## AND
## LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

**IT IS FURTHER ORDERED** that Beiler is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement

to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a court must first issue a certificate of appealability. Section 2253(c)(2) limits the issuing of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Beiler must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to make this showing, Beiler is not entitled to a certificate of appealability. Therefore, he is not entitled to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed *in forma pauperis* on appeal is **DENIED**. Beiler must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on this 21st day of June, 2022.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE